UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LASEAN GOODE,

<em>Plaintiff</em>

v.

UNITED STATES OF AMERICA, FEDERAL                    **<u>COMPLAINT</u>**
BUREAU OF PRISONS, MDC BROOKLYN,
FCI DANBURY, FCI ALLENWOOD,
MDC BROOKLYN WARDEN, FCI DANBURY                     **<u>JURY DEMAND</u>**
WARDEN, FCI ALLENWOOD WARDEN
and JOHN & JANES DOES #1–10,

<em>Defendants</em>

-------------------------------------------------------------X

The PLAINTIFF, LASEAN GOODE, by and through his attorneys, TANNER & ORTEGA, LLP., complaining of the Defendant(s) herein, states and alleges as follows:

<u>INTRODUCTION</u>

1. LASEAN GOODE (hereinafter "PLAINTIFF") brings this lawsuit pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Constitution of the United States, and the Federal Tort Claims Act (hereinafter "FTCA") for the violation of constitutionally protected rights and various torts arising from an abuse of power by Defendant UNITED STATES OF AMERICA (hereinafter "UNITED STATES"), and by the conduct of the United States Federal Bureau of Prisons (hereinafter "BOP") employees, officers, and medical staff, namely JOHN & JANE DOES #1–10, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN (whose full names are unknown to PLAINTIFF at this time).

2. PLAINTIFF is a citizen of the United States.

3.  PLAINTIFF was detained at Federal Correctional Institute Danbury (hereinafter "FCI Danbury") spanning approximately December 2018 until January 2020.

4.  PLAINTIFF was detained at Metropolitan Detention Center in Brooklyn, Kings County Detention Center (hereinafter "MDC Brooklyn") spanning January 15, 2020 until March 2020.

5.  PLAINTIFF was detained at Federal Correctional Institute Allenwood (hereinafter "FCI Allenwood") spanning March 2020 until July 20, 2020.

6.  PLAINTIFF suffered tortious conduct at the hands of BOP employees, officers, agents, and/or medical personnel across FCI Danbury, MDC Brooklyn, and FCI Allenwood.

7.  PLAINTIFF suffered such conduct at the aforementioned facilities on the following days: March 29, 2019; May 6, 2019; June 18, 2019; October 17, 2019; October 29, 2019; March 20, 2020; March 24, 2020; March 26, 2020; May 6, 2020; and May 15, 2020.

8.  PLAINTIFF is a 39–year old man who was born with sickle cell anemia, which is incurable and may affect eyesight, which it did, in this case.

9.  PLAINTIFF was arrested by the FBI, without incident, in his apartment in West Haverstraw, New York on August 9, 2016.

10. While detained at the aforementioned three (3) facilities, all of which are supervised by the BOP, PLAINTIFF was subjected to negligence, intentional and negligent infliction of emotional distress, deliberate medical indifference, medical negligence, and cruel and unusual punishment by BOP employees, agents, personnel, and medical personnel.

11. The aforementioned conduct is intentional, wanton, negligent, and reckless constituting claims under Bivens and the FTCA.

12. PLAINTIFF seeks relief from this Court for the significant pain, suffering, physical, and emotional injuries as a result of the aforementioned DEFENDANTS' violation of his legal, civil, and constitutionally protected rights.

## **JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over PLAINTIFF's federal claims under 28 USC §1331 and §1346(b).

14. This Court also has supplemental jurisdiction over the State claims and over Defendants pursuant to 28 USC §1367.

15. That 28 USC §2679(2)(A) expressly waives immunity for the Defendants named in their capacities as individuals and allows PLAINTIFF to proceed against these individuals for violations of his rights guaranteed by the United States Constitution.

16. PLAINTIFF has exhausted his administrative remedies. Pursuant to the FTCA, 28 USC §2671, *et seq*., as PLAINTIFF, on or about October 6, 2020 presented his claim to the appropriate federal agencies (BOP) for administrative settlement under the FTCA. The BOP issued a denial of PLAINTIFF's claim on July 16, 2021.

17. A reconsideration claim was submitted on September 15, 2021 and BOP issued a denial of the reconsideration claim on September 20, 2023.

18. This action is timely pursuant to 28 USC §2401(a), as it was presented to the appropriate agency within two years of accrual and this action was filed within six months of denial of PLAINTIFF's administrative claims.

19. 42 USC §1997(e), the Prison Litigation Reform Act, does not apply to this action due to PLAINTIFF's release from prison facilities prior to the filing of this complaint / PLAINTIFF complied with 42 U.S.C §1997(e), the Prison Litigation Reform Act, by commencing his grievance actions on October 6, 2020.

20. PLAINTIFF has been deprived of his rights guaranteed by the United States Constitution and laws of the United States.

21. PLAINTIFF has been deprived of his rights by the Defendants acting under color of federal law.

22. Venue is proper in this judicial district pursuant to 28 U.S. Code §1402 (a) (1) because the PLAINTIFF resides within this judicial district.

## **PARTIES**

23. PLAINTIFF is, and at all relevant times was, a native citizen of the United States and resident of New York State.

24. Upon information and belief, DEFENDANT UNITED STATES is the government of the United States of America and is the appropriate Defendant under the FTCA, 28 U.S.C § 2671, *et seq.*, for the tort claims in this complaint.

25. Upon information and belief, at all times hereinafter mentioned, Defendant UNITED STATES was and still is a sovereign entity named herein pursuant to the FTCA.

26. Upon information and belief, at all times hereinafter mentioned, the Defendant UNITED STATES is the only proper Defendant in an FTCA action, pursuant to 28 U.S.C. §2679(d)(2), and all of PLAINTIFF's tort claims herein against DEFENDANT are subsumed by the FTCA

which provides an exclusive remedy for all tort suits against the government and its senior, supervisory and subordinate agents, servants and employees ("employees").

27. Upon information and belief, at all times hereinafter mentioned the United States Department of Justice is an agency of the Defendant UNITED STATES and as such, was and still is a federal entity named herein pursuant to the FTCA.

28. Upon information and belief, at all times hereinafter mentioned, the Defendant BOP's facilities are divisions, components, agents and/or contract partners of the United States Department of Justice and as such, were, and still are, federal entities named herein pursuant to the FTCA.

29. Upon information and belief, at all times hereinafter mentioned, the Defendants MDC Brooklyn, FCI Danbury, and FCI Allenwood were, and still are, operated, controlled, and supervised as divisions, agents, components, and contract partners of the BOP and, as such, were and still are federal entities named herein pursuant to the FTCA.

30. Upon information and belief, at all times herein, DEFENDANTS JOHN & JANE DOES #1–10, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN (whose full names are unknown to PLAINTIFF at this time) were the BOP guards, officers, staff and/or medical personnel assigned to and/or working at MDC Brooklyn, FCI Danbury, and FCI Allenwood, who were charged with supervising, protecting, caring and treating PLAINTIFF while he was at MDC Brooklyn, FCI Danbury, and FCI Allenwood, all of which were and still are components, agents and/or contractors with and/or of the United States Department of Homeland Security. At all relevant times, these individuals were acting under color of federal law, as agents, employees, and/or representatives of the Defendant UNITED STATES.  They are sued in their individual and official capacity.

31. During all times mentioned in this complaint, all the Defendants were acting under color of Federal Law — that is under the color of the Constitution, Statutes, Laws, Charter, Ordinances, Rules, Regulations, Customs, and usages of the United States of America.

32. During all times mentioned in this complaint, the Defendants acted jointly, and in concert, with each other. Each Defendant had the duty to abide by the Constitution and Laws while protecting the PLAINTIFF from substantial risk of harm, injury, unnecessary pain, and suffering. Defendant had the duty to act in accordance with contemporary standards of decency to ensure that the PLAINTIFF's serious medical needs were properly and timely treated after being "advised and aware" of the substantial risk of serious harm that could result with the PLAINTIFF being seriously injured.

33. At all times relevant herein, each Defendant consciously disregarded the substantial risk of harm, and with deliberate indifference, refused and failed to prevent the PLAINTIFF from sustaining serious injuries and enduring pain/suffering; thereby subjecting the PLAINTIFF to cruel and unusual punishment, whereby the PLAINTIFF suffered serious injuries. Each defendant acted outside the scope of their employment, in bad faith.

34. At all relevant times herein, the individual Defendants acted jointly, and in concert, with each other to deprive the PLAINTIFF of his civil rights.

35. Each individual Defendant had the duty and opportunity to protect PLAINTIFF from the unlawful actions of the other individual Defendants. Yet, each individual Defendant failed and refused to perform such duty, thereby proximately causing PLAINTIFF's injuries.

## FACTUAL ALLEGATIONS PERTINENT TO ALL COUNTS

36. PLAINTIFF Lasean Goode is a 39–year old African American male who was born with sickle cell anemia, which has no cure and can negatively affect the eyes.

37. On August 9, 2016, PLAINTIFF was arrested by the FBI, without incident, in his apartment in West Haverstraw, New York.

38. On November 2, 2018, PLAINTIFF was sentenced to sixty (60) months imprisonment and four (4) years of supervised release.

39. PLAINTIFF's incarceration began at Westchester County Prison, at which point his complaints regarding his worsening vision were met with the response of "nothing was wrong."

40. On 2018, he was transferred to FCI Danbury, where he remained incarcerated until January 2020.

41. On March 19, 2019, PLAINTIFF was evaluated by Dr. Thomas Wagner, an optometrist at FCI Danbury as a result of PLAINTIFF experiencing a "sudden decrease" in vision with "'explosion' in sight with colors" and a "significant loss in clarity."

42. Dr. Wagner reported that he had a "very high suspicion" that PLAINTIFF's eye complications were caused by his sickle cell condition.

43. On March 29, 2019, after finding vitreous hemorrhaging in PLAINTIFF's right eye, Dr. Wagner requested a consultation with Dr. Christopher R. Reynolds, an ophthalmic physician and surgeon. Dr. Wagner's request was marked as "urgent" and stated, "referral necessary ASAP to ophthalmology/retinal specialist" and that the visit was to be scheduled at "earliest convenience for best potential outcome."

44. Over a month later, on May 6, 2019, PLAINTIFF was finally seen by Dr. Reynolds, who noted that there was "a potential need for vitrectomy" to be performed by a retinal specialist.

45. Two days later on May 8, 2019, PLAINTIFF consulted with Dr. Wagner once again, who reported, "this could be more than a vitreous heme, with potential retinal detachment." He also requested an "urgent" consultation with a retinal specialist "due to [the] complex nature of [the] condition and the potential need for advanced methods to appropriately diagnose [the] extent of the problem."

46. Over a month later, on June 18, 2019, PLAINTIFF was evaluated by Dr. Vincent S. Reppucci from Vitreoretinal Surgeons, LLP. Dr. Reppucci then recommended a vitrectomy in the right eye and laser treatment in the left eye.

47. Dr. Reppucci instructed PLAINTIFF to notify the "appropriate authorities" if he were to note visual loss in either eye so that a "repeat retinal evaluation be performed on a timely basis."

48. On October 17, 2019 PLAINTIFF began to suffer from blurred vision in his right eye in the midst of a sickle cell crisis.

49. PLAINTIFF alerted the BOP, who can be considered the "appropriate authorities."

50. On October 29, 2019, PLAINTIFF was evaluated by Dr. Reppucci again, at which point he suggested PLAINTIFF "obtain a surgical consultation for [the] right eye to remove traction" due to the fact Dr. Reppucci had discovered a detachment in PLAINTIFF's retina.

51. Despite follow–up and evaluation appointments that were scheduled and pending, the October 29, 2019 consultation with Dr. Reppucci was the last time PLAINTIFF's eyes were evaluated while at FCI Danbury.

52. On January 15, 2020, PLAINTIFF was transferred to MDC Brooklyn.

53. That there is no evidence to support claims that consultation requests that did not take place at FCI Danbury were re–submitted with a target date of February 19, 2020.

54. In March 2020, PLAINTIFF was transferred to FCI Allenwood.

55. In March 20, 2020, during a 14–day intake evaluation, D.O. Thomas Cullen noted that PLAINTIFF saw a vitreoretinal specialist in October 2019 and that the recommended surgery was "apparently not done."

56. D.O. Thomas Cullen, presumably taking note of the urgency of the situation, scheduled a same–day urgent evaluation at Geisinger Eye Institute, located at 16 Woodbine Lane, Danville PA 17822, in the midst of the COVID–19 pandemic.

57. At the aforesaid appointment at Geisinger Eye Institute, PLAINTIFF stated that he had suffered of blindness in his right eye for two (2) weeks.

58. PLAINTIFF was diagnosed with vitreous hemorrhage and possible retinal detachment in the right eye and ischemic retina and neovascularization in the periphery of the left eye.

59. PLAINTIFF was scheduled to undergo surgery in both eyes.

60. Dr. Steven J. Marks explained that laser surgery in the left eye would prevent damage that the right eye endured.

61. On March 24, 2020, Dr. Marks and Dr. Gordon Crabtree performed a pars plana vitrectomy, complex membrane peeling, and endolaser silicone oil on PLAINTIFF's right eye.

62. On March 24, 2020, Dr. Marks and Dr. Crabtree performed a laser panretinal photocoagulation on PLAINTIFF's left eye.

63. On March 24, 2020, during the aforesaid procedures to PLAINTIFF's left and right eye, it was concluded that PLAINTIFF had traction retinal detachment involving superior macula.

64. As early as March 26, 2020, two (2) days after the aforesaid procedures to his left and right eye, PLAINTIFF had a "little bit of his vision back."

65. By May 6, 2020, PLAINTIFF had blurry vision and could make out objects, but couldn't read.

66. On May 15, 2020, PLAINTIFF did not experience a change in vision and has since suffered from permanent partial loss of vision in his right eye.

## CAUSES OF ACTION UNDER FEDERAL TORTS CLAIM ACT ("FTCA")

### FIRST CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT UNITED STATES OF AMERICA

67. The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 66 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

68. The above described actions of the Defendant UNITED STATES, by and through its agents, servants, and employees, working at MDC Brooklyn, FCI Danbury, and FCI Allenwood namely, JOHN & JANE DOES #1–10, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN, engaged in extreme and outrageous conduct, jointly and individually, namely unreasonably delaying and/or denying him proper medical care, which were all actions and conduct done with the intent to cause, or with the intentional disregard of a substantial probability of causing, severe emotional distress to the PLAINTIFF.

Further, each one of these acts alone constituted extreme, outrageous and unconscionable conduct, outside the bounds of normal conduct, and caused severe fear whose painful recall still injures the PLAINTIFF.

69. The PLAINTIFF was caused to suffer and continues to suffer emotional injury, loss of enjoyment of life and his usual and customary activities and social and familial relationships.

70. Such extreme and outrageous conduct shocks the conscious, is not expected or to be tolerated in a civilized society, and PLAINTIFF demands damages therefrom in an amount not lower than the amount previously claimed before the administrative agency in this action.

**<u>SECOND CLAIM FOR RELIEF</u>**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT**
**UNITED STATES OF AMERICA**

71. The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 70 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

72. The above described actions of the Defendant UNITED STATES, by and through its agents, servants, and employees, working at MDC Brooklyn, FCI Danbury, and FCI Allenwood namely, JOHN & JANE DOES #1–10, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN, variously, jointly and individually, negligently and recklessly inflicted emotional injury on the PLAINTIFF when they failed to protect PLAINTIFF from a known and/or foreseeable harm namely, due to negligently delaying and/or denying him proper medical care, which were all actions and conduct done with the intent to cause, or with the intentional disregard of a substantial probability of causing, severe emotional distress to the PLAINTIFF. Further, each one of these acts alone constituted

extreme, outrageous and unconscionable conduct, outside the bounds of normal conduct, and caused severe fear whose painful recall still injures the PLAINTIFF.

73. Due to the Defendant UNITED STATES's extreme and outrageous conduct, by and through the actions of its employees, agents or subagents, to wit, the aforementioned Defendants JOHN & JANE DOES #1–10, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN,  PLAINTIFF was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain and severe emotional distress.

74. By the reason of the foregoing, PLAINTIFF, was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous attacks and mental anguish, great physical pain and emotional upset, some of which injuries are permanent in nature and duration, and PLAINTIFF will be permanently caused to suffer pain and inconvenience and other effects of such injuries; and PLAINTIFF has incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of such said injuries; and PLAINTIFF has suffered and in the future will necessarily suffer additional loss of time from his usual pursuits, duties and activities; and PLAINTIFF will be unable to pursue PLAINTIFF'S usual duties with the same degree of efficiency as prior to this occurrence all to PLAINTIFF'S great damage.

75. The above acts, which are indicative of a tort under the laws of New York, Pennsylvania, and Connecticut, are actionable under the FTCA.

76. Accordingly, the aforementioned Defendants negligently inflicted emotional distress on PLAINTIFF, who has been damaged and seeks relief and compensation in an amount not

lower than the amount previously claimed before the administrative agency in this action.

**THIRD CLAIM FOR RELIEF**
**MEDICAL NEGLIGENCE AGAINST DEFENDANT UNITED STATES OF AMERICA**

77. The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 76 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

78. At all relevant times, PLAINTIFF was in the custody of the individual agents, servants, and/or employees of Defendant UNITED STATES and JOHN & JANE DOES #1–10, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN.

79. At all relevant times, Defendant UNITED STATES, through the aforementioned individuals, was exclusively responsible for PLAINTIFF's medical care, thereby creating a professional duty owed to the PLAINTIFF.

80. Dr. Thomas Wagner and Dr. Thomas Cullen, BOP employees based out of FCI Danbury and FCI Allenwood, indicated that PLAINTIFF required immediate surgery, among other forms of treatment, but found that surgery was "apparently not done."

81. PLAINTIFF made multiple requests for follow–up medical treatment, but did not receive any of the requested treatment.

82. The PLAINTIFF's treatment was delayed for approximately five (5) months.

83. The delay in medical treatment is alleged to have contributed to PLAINTIFF suffering blindness in his right eye.

84. The PLAINTIFF was repeatedly lied to, manipulated, and denied his necessary medical care.

85. Additionally, Defendant UNITED STATES OF AMERICA, through the aforementioned individuals, negligently, carelessly, and unskillfully failed to provide PLAINTIFF with the medically correct and/or appropriate care and treatment for the  ruptured globe of the left eye and negligently and carelessly failing to follow standard and good medical practice including follow-up recommendations, responding to PLAINTIFF's complaints, conducting recognized tests and procedures, and scheduling treatment. This conduct deviated from the appropriate established reasonable standard of care, thereby constituting a breach of Defendant's professional duty and duty to exercise reasonable care, which proximately caused pain and suffering, such as, pain, loss of sight, among other injuries.  Prompt treatment would have prevented the onset of the loss of eyesight, and sequelae injury.

86. Throughout the course of PLAINTIFF's detainment, while suffering injuries to his eye, he did not receive a proper diagnosis.

87. Preventative treatment methods were not performed, thus causing a complete loss of vision in PLAINTIFF's right eye.

88. The Defendant UNITED STATES, through the aforementioned individuals, negligently and carelessly failed to provide an accurate and proper diagnosis and negligently and carelessly failed to recognize PLAINTIFF's complaints.

89. This conduct deviated from the appropriate established reasonable standard of care, thereby constituting a breach of Defendant's professional duty and duty to exercise reasonable care which proximately and directly caused pain and suffering, such as emotional distress, trauma, and anxiety, all of which he is presently battling.

90. By reason of the foregoing negligent and careless acts of the Defendant UNITED STATES,

through the actions of the aforementioned individuals, acting with medical negligence under the laws of the states of New York, Connecticut, and Pennsylvania.

91. Thus, PLAINTIFF seeks relief and compensation  in an amount not lower than the amount previously claimed before the administrative agency in this action.

## FOURTH CLAIM FOR RELIEF
## GROSS NEGLIGENCE IN HIRING, TRAINING, AND RETENTION OF EMPLOYEES AGAINST DEFENDANT UNITED STATES OF AMERICA

92. The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 91 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

93. During all relevant times herein, and particularly from the subject date of PLAINTIFF's injury, through the repeated denial of proper medical care by BOP staff resulting in the loss of use and eyesight in his right eye, PLAINTIFF suffered negligent supervision, negligence, assault, battery, racial discrimination and medical negligence, among other damages, resulting in physical injury and emotional distress at the hands of Defendant, UNITED STATES, through its senior, supervisory and/or subordinate agents, agencies, servants and/or employees who were all federal employees acting in their official capacities.

94. At all relevant times, the JOHN & JANE DOES #1–10, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN had affirmative duties to protect the incarcerated PLAINTIFF. The said omissions and derelictions of duty were willful, wanton, reckless, malicious, and/or exhibited a gross indifference to human life, safety and the rights of others, and the rights, life and safety of PLAINTIFF.

95. The Defendant, UNITED STATES, by and through the actions of its senior, supervisory

and/or subordinate agents, agencies, servants and/or employees, was negligent in the hiring, training, and in retention of the aforementioned individuals who fostered an atmosphere which encouraged, allowed, and accepted the continuation of improper and illegal behavior as to the PLAINTIFF's safety, rights, and well-being.

96. As a direct and proximate result of the negligent hiring, supervision, and retention of employees Defendant, UNITED STATES, by and through the actions of its senior, supervisory and/or subordinate agents, agencies, servants and/or employees, PLAINTIFF sustained harm, injury, physical pain, anguish, emotional pain and suffering and continues to suffer from emotional pain and suffering.

97. By reason of the foregoing, PLAINTIFF has been damaged and seeks relief and compensation  in an amount not lower than the amount previously claimed before the administrative agency in this action.

**FIFTH CLAIM FOR RELIEF**
**NEGLIGENCE AGAINST DEFENDANT UNITED STATES OF AMERICA**

98. The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 97 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

99. The aforementioned actions of the Defendant UNITED STATES, by and through its senior, supervisory and /or subordinate agents, agencies, servants and/or employees were all federal employees acting in their official and individual capacities, constitute negligence under the FTCA in that these agents of the Defendant UNITED STATES, owed a duty of care to PLAINTIFF, and Defendant breached that duty of care by acting in violation of the Constitution, laws, Statutes and Regulations of the USA, not least of which is FTCA, as well

as the Constitution, Laws, Statutes and Regulations of New York State.

100.    Common law sets forth that a public entity, under a mandatory duty, is liable for any injury proximately caused by a breach of duty. This aforementioned conduct, including, but not limited to, failure to properly and safely supervise the prison population; failure to prevent a foreseeable dangerous hazardous condition in a prison; failure to protect inmates from other inmate violence; failure to prevent an assault and battery by one inmate against another; failure to provide prompt and proper medical care to an injured prisoner; failure to provide timely medical treatment, medical negligence, deliberate indifference to medical needs, constitutes a breach of duty which was the direct and proximate cause and a substantial factor in the injuries and damage PLAINTIFF endured and continues to endure.

101.    At all relevant times, the aforementioned individuals involved in each cause of action were acting under the scope of their employment and had a duty to exercise mandatory protocols and exercise due diligence of law enforcement under the FTCA. Violations of such duties include: failing to exercise the appropriate due diligence to avoid unreasonable harm and injury to PLAINTIFF, failing to seek and provide all relevant and reasonable medical care for PLAINTIFF; failing to properly investigate wrongdoings by defendant employees, agents, servants and other personnel; failing to intervene as and against other Defendants' sub-agents who were intentionally, recklessly and or negligently failing in their duties to PLAINTIFF; failing to properly supervise and review the negligent and or intentional wrongdoing of its sub-agents who were contravening the law and constitution; failing in their duty to exercise reasonable care in the performance of their professional responsibilities; failing in this duty to exercise reasonable care as it applies to the investigation of threats of violence against PLAINTIFF, and failing in their duty of reasonable care. Taking part in the

aforementioned prohibited acts without legal justification and without taking reasonable precautions to avoid harm to PLAINTIFF, their duty was breached causing the PLAINTIFF harm.

102.    Based upon the foregoing, Defendant UNITED STATES was negligent toward PLAINTIFF and PLAINTIFF has been damaged, and seeks relief and compensation, in an amount not lower than the amount previously claimed before the administrative agency in this action.

## SIXTH CLAIM FOR RELIEF
## NEGLIGENT GUARD VIOLATIONS AGAINST
## DEFENDANT UNITED STATES OF AMERICA

103.    The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 102 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

104.    The aforementioned actions of the Defendant, UNITED STATES, by and through its senior, supervisory and/or subordinate agents, agencies, servants and/or employees were all federal employees acting in their individual capacities, constitute negligent guard violations under the FTCA in that these agents of the Defendant UNITED STATES owed a duty of care to PLAINTIFF, and Defendants breached that duty of care by acting in violation of the United States Constitution, New York state laws, and federal statutes and regulations. Such violations include, but are not limited to, failure to use reasonable care in carrying out their duty; failure to properly supervise inmates to avoid inmate on inmate violence; failing to provide him with timely medical care; medical neglect; deliberate indifference; racial discrimination; failure to intervene by turning a blind eye to inhumane and outrageous conduct of other guards and staff and ignoring his pleads and complaints, and failure to comport their conduct as providers of

PLAINTIFF's care and custody, with applicable statutes, rules, regulations and ordinances.

105.  These violations directly and proximately caused physical and emotional distress, unnecessary medical consequences, and trauma which has manifested in present day, and more.

106.  Based upon the foregoing, Defendant UNITED STATES, by and through the aforementioned individuals, negligently discharged their duties without legal justification or reasonable precautions causing harms constituting negligence of guards toward PLAINTIFF. Accordingly, PLAINTIFF has been damaged and seeks  relief and compensation in an amount not lower than the amount previously claimed before the administrative agency in this action.

**CAUSES OF ACTION UNDER BIVENS**
**SEVENTH CLAIM FOR RELIEF**
**NEGLIGENT GUARD VIOLATIONS AGAINST DEFENDANTS**
**JOHN & JANE DOES #1–10, MDC BROOKLYN WARDEN, FCI ALLENWOOD**
**WARDEN, and FCI DANBURY WARDEN**
**(In Violation Of PLAINTIFF's Fourth Amendment Rights)**

107.  The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 106 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

108.  Defendant, UNITED STATES, by and through its agents, servants and employees, namely, JOHN & JANE DOES #1–10, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN, had an affirmative duty to intervene on behalf of PLAINTIFF, whose constitutional rights were being violated in their presence by other officers insofar as each officer, upon information and belief, had both an individual and official overlapping interrelated collective duty to PLAINTIFF to ensure that his safety, security and care was in accordance with PLAINTIFF's constitutional rights.

**109.** The aforementioned conduct exerted by the aforementioned officers, physicians, nurses, and others were so outrageous and extreme that it would not be expected nor tolerated in a civilized society, thereby suggesting to present officers that PLAINTIFF's rights are being violated.

**110.** The PLAINTIFF suffered negligence in plain view, and in the presence, of multiple members of BOP staff and then made multiple requests for medical care, which were patently ignored, and that these officers thereupon did not intervene, thereby breaching their affirmative duty.

**111.** Based on the foregoing, Defendant, UNITED STATES, by and through the aforementioned individuals failed to intervene on behalf of PLAINTIFF and PLAINTIFF has been damaged, and seeks relief and compensation, in an amount to be determined by the Court.

**EIGHTH CLAIM FOR RELIEF**
**CRUEL AND UNUSUAL PUNISHMENT AGAINST DEFENDANTS**
**MDC BROOKLYN WARDEN, FCI DANBURY WARDEN, FCI ALLENWOOD**
**WARDEN, AND JOHN & JANE DOES #1–10**
**(In Violation Of PLAINTIFF's Fifth and Eighth Amendment and**
**Due Process Rights)**

**112.** The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 111 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

**113.** Upon information and belief Defendant, UNITED STATES, by and through its agents, servants, and/or employees working for the BOP namely, JOHN & JANE DOES #1–10, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN, variously, jointly and individually, acted under color of federal authority failed

to properly treat the injury he sustained intending to instill severe fear and further injury, constituting cruel and unusual punishment in violation of the PLAINTIFF's Fifth and Eighth Amendment Rights.

114.    The aforementioned actions were unnecessary, without justification or provocation, a deliberate abuse of governmental power, rejected in a civilized society, and resulted in a deprivation of human dignity and the right to be free from cruel and unusual punishment as set forth by the Constitution. Upon information and belief, these cruel and unusual acts were done in retaliation for PLAINTIFF's complaints and desire to defend himself.

115.    As a direct and proximate cause of the aforementioned actions, PLAINTIFF has suffered damages and based on the willful, wanton, and egregious nature of Defendant's actions, PLAINTIFF is entitled to punitive damages.

116.    By the reason of the foregoing, PLAINTIFF was severely injured, damaged, sustaining severe nervous attacks and mental anguish, great physical pain, and emotional upset, some of which injuries are permanent in nature and duration. PLAINTIFF will be permanently caused to suffer emotional distress, inconvenience, and other effects stemming from such injuries. PLAINTIFF has incurred, and in the future will necessarily incur, further medical treatment and/or medical expenses in an effort to be cured of such said injuries. Such medical expenses include psychological services, which he currently receives. PLAINTIFF has suffered, and in the future will necessarily suffer, additional loss of time from his usual pursuits, duties and activities; and PLAINTIFF will be unable to pursue PLAINTIFF's usual duties with the same degree of efficiency as prior to this occurrence, all to PLAINTIFF's great damage.

117.    The PLAINTIFF was caused to suffer, and continues to suffer, emotional injury, loss of

enjoyment of life, and his usual and customary activities and social and familial relationships.

118.    Accordingly, PLAINTIFF has been damaged and seeks relief in compensatory and punitive damages.

**NINTH CLAIM FOR RELIEF**
**DELIBERATE INDIFFERENCE CLAIM FOR FAILURE TO PROVIDE MEDICAL CARE AGAINST DEFENDANTS MDC BROOKLYN WARDEN, FCI DANBURY WARDEN, FCI ALLENWOOD WARDEN, AND JOHN & JANE DOES #1–10**
**(In Violation Of PLAINTIFF's Eighth Amendment Right)**

119.    The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 118 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

120.    At all relevant times, PLAINTIFF was in the custody of the individual agents, servants, and/or employees of Defendant UNITED STATES, namely, JOHN & JANE DOES #1–10, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN.

121.    That "[t]he Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care," thereby establishing the duty of the aforementioned individuals. Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). To prove deliberate indifference, the deprivation of treatment must be "sufficiently serious" and the prison official must act with a sufficiently capable culpable state of mind." Id. at 184, 185.

122.    The deprivation of treatment is considered serious if "a reasonable doctor, or patient, would find it important and worthy of comment, if it's found that the condition significantly affects an individual's daily activities, and if it's found that it causes chronic and substantial pain. Id. at 280.

123.  The delay in treating PLAINTIFF's eye was serious because Dr. Thomas Wagner, a doctor working at FCI Danbury, indicated on 5/8/2019 that given PLAINTIFF'S eye injuries, he was requesting an "urgent" consultation with a retinal specialist "due to [the] complex nature of [the] condition and potential need for advanced methods to appropriately diagnose [the] extent of the problem."

124.  Dr. Wagner requested a necessary referral "ASAP" for "best potential outcome" and later requested another "urgent" consultation. Dr. Reppucci suggested surgical treatment in both eyes twice. Dr. Cullen made note that recommended surgery was not done and scheduled a same-day urgent evaluation at Geisinger Eye Institute. This appointment was scheduled so quickly, despite delays caused by the COVID-19 pandemic. Dr. Marks suggested that surgery also be done in the left eye as a preventative measure.

125.  Further, on 3/20/20, Dr. Thomas Cullen noted that PLAINTIFF's recommended surgery was "apparently not done."

126.  PLAINTIFF repeatedly made Defendants JOHN & JANE DOES #1–10, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN aware of his medical condition, prior treatment and symptoms to his eyes required to effectively mitigate his sickle cell anemia; the progressive and continuous aggravation of his eye injuries and declining eyesight.

127.  BOP staff, officers and doctors acted with a culpable state of mind as they knowingly ignored PLAINTIFF's complaints and pleas to receive his necessary treatment.

**128.** PLAINTIFF's condition had been diagnosed by a physician as urgently requiring appropriate treatment due to suffering from a condition that is so obvious that a lay person would easily recognize the necessity for a physician's attention and treatment.

**129.** The Defendant's refusal and/or failure to provide medical care was deliberate, wanton, willful, and violated the PLAINTIFF's rights, as provided under the Constitution, constituting a claim for deliberate indifference to PLAINTIFF's medical needs against Defendant, UNITED STATES. Based on the willful, wanton, and egregious nature of Defendant's actions, PLAINTIFF is entitled to punitive damages.

**130.** Herein, PLAINTIFF incorporates a claim for relief under <u>Bivens</u> as the aforementioned Defendants instituted and implemented customs and practices which encouraged and abetted the violations of the PLAINTIFF's constitutional rights.

**131.** Accordingly, PLAINTIFF has been damaged and seeks relief in compensatory and punitive damages.

<u>**TENTH CLAIM FOR RELIEF**</u>
**RACIAL DISCRIMINATION CLAIM AGAINST DEFENDANTS**
**MDC BROOKLYN WARDEN, FCI DANBURY WARDEN, FCI ALLENWOOD**
**WARDEN, AND JOHN & JANE DOES #1–10**
**(In Violation Of PLAINTIFF's Fourteenth Amendment Right)**

**132.** The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 132 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

**133.** Defendant, UNITED STATES, by and through its agents, servants and employees, namely BOP staff, willfully, wantonly, and maliciously discriminated against PLAINTIFF, violating his Constitutional right under the Fourteenth Amendment.

**134.**   Direct evidence of racial discrimination includes, "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of" race.  Jefferson v. Sewon Am., Inc., 891 F.3d 911, 922 (11d Cir. 2018) (citation and internal quotation marks omitted).

**135.**   That PLAINTIFF was a victim of implicit racism, as it is well established that Black and Brown federal inmates, like PLAINTIFF, receive inadequate, racially biased  supervision, and medical care, in violation of legal and ethical norms.

**136.**   That the failure to prevent PLAINTIFF's unreasonable delay in treating his eye injuries are manifest demonstrations of racial inequality in the federal correctional context.

**137.**   That no other meaning can be attributed to this outrageous conduct and treatment which was inhumane and unjustified  other than it was racial driven either explicitly or implicitly in violation of his rights set forth in the Constitution.

**138.**   Not only was PLAINTIFF discriminated against, but these acts of discrimination directly, and proximately, led to the aforementioned physical and emotional injuries he sustained.

**139.**   Herein, PLAINTIFF incorporates a claim for relief under Monell as the aforementioned Defendants instituted and implemented customs and practices which encouraged and abetted the violations of the PLAINTIFF's constitutional rights.

**140.**   Based on the foregoing, Defendant, UNITED STATES, by and through the aforementioned individuals deprived PLAINTIFF of his constitutional right.  Accordingly, PLAINTIFF seeks punitive and compensatory damages.

## PRAYER FOR RELIEF

**WHEREFORE,** PLAINTIFF demands judgment against the defendants in an amount not lower than the amount previously claimed before the administrative agency in this actions and or in an amount to be determined upon the trial of this action, together with the costs and disbursements of this action and any other such relief as this honorable Court may deem just, fair and proper, to wit:

A. Compensatory damages for torts committed against PLAINTIFF, LASEAN GOODE, in an amount not lower than previously claimed in the administrative agency actions.

B. Declaratory relief for violations of the Federal Tort Claims Act;

C. Punitive damages in in a total amount not lower than $10,000,000.00;

D. Pursuant to §§1988, an award of reasonable attorneys' fees, costs, and expenses of litigation; and as permitted by law prejudgment interest.

E. Such additional and further relief as the Court may deem just and proper.

Dated: March 19, 2024
New York, NY

Tanner & Ortega, LLP.
Hugo Ortega, Esq.
*Attorney for Plaintiff*
299 Broadway – 17th Floor
New York, NY – 10007
(212) 962 – 1333