UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LASEAN GOODE,

                        *Plaintiff*

—v.—

UNITED STATES OF AMERICA, MDC
BROOKLYN WARDEN,
FCI DANBURY WARDEN,
FCI ALLENWOOD WARDEN,

                        *Defendant(s)*

AMENDED COMPLAINT

Docket No. 1:24-cv-02054 (DLC)

The PLAINTIFF, LASEAN GOODE, by and through his attorneys, REHAN NAZRALI, ESQ. and TANNER & ORTEGA, LLP., complaining of the Defendant(s) herein, states and alleges as follows:

## INTRODUCTION

1.     LASEAN GOODE (hereinafter "PLAINTIFF") brings this lawsuit pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Constitution of the United States, and the Federal Tort Claims Act (hereinafter "FTCA") for the violation of constitutionally protected rights and various torts arising from an abuse of power by Defendant UNITED STATES OF AMERICA (hereinafter "UNITED STATES"), and by the conduct of the United States Federal Bureau of Prisons (hereinafter "BOP") employees, officers, and medical staff, namely JOHN & JANE DOES #1–10, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN (whose full names are unknown to PLAINTIFF at this time).

2.     PLAINTIFF is a citizen of the United States.

3.      PLAINTIFF was detained at Federal Correctional Institute Danbury (hereinafter "FCI Danbury") spanning approximately December 2018 until January 2020.

4.      PLAINTIFF was detained at Metropolitan Detention Center in Brooklyn, Kings County Detention Center (hereinafter "MDC Brooklyn") spanning January 15, 2020 until March 2020.

5.      PLAINTIFF was detained at Federal Correctional Institute Allenwood (hereinafter "FCI Allenwood") spanning March 2020 until July 20, 2020.

6.      PLAINTIFF suffered tortious conduct at the hands of BOP employees, officers, agents, and/or medical personnel across FCI Danbury, MDC Brooklyn, and FCI Allenwood.

7.      PLAINTIFF suffered such conduct at the aforementioned facilities on the following days: March 29, 2019; May 6, 2019; June 18, 2019; October 17, 2019; October 29, 2019; March 20, 2020; March 24, 2020; March 26, 2020; May 6, 2020; and May 15, 2020.

8.      PLAINTIFF is a 39–year old man who was born with sickle cell anemia, which is incurable and may affect eyesight, which it did, in this case.

9.      PLAINTIFF was arrested by the FBI, without incident, in his apartment in West Haverstraw, New York on August 9, 2016.

10.     While detained at the aforementioned three (3) facilities, all of which are supervised by the BOP, PLAINTIFF was subjected to negligence, intentional and negligent infliction of emotional distress, deliberate medical indifference, medical negligence, and cruel and unusual punishment by BOP employees, agents, personnel, and medical personnel.

11.     The aforementioned conduct is intentional, wanton, negligent, and reckless constituting claims under Bivens and the FTCA.

12.     PLAINTIFF seeks relief from this Court for the significant pain, suffering, physical, and emotional injuries as a result of the aforementioned DEFENDANTS' violation of his legal, civil, and constitutionally protected rights.

JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over PLAINTIFF's federal claims under 28 USC §1331 and §1346(b).

14.     This Court also has supplemental jurisdiction over the State claims and over Defendants pursuant to 28 USC §1367.

15.     That 28 USC §2679(2)(A) expressly waives immunity for the Defendants named in their capacities as individuals and allows PLAINTIFF to proceed against these individuals for violations of his rights guaranteed by the United States Constitution.

16.     PLAINTIFF has exhausted his administrative remedies. Pursuant to the FTCA, 28 USC §2671, *et seq.*, as PLAINTIFF, on or about October 6, 2020 presented his claim to the appropriate federal agencies (BOP) for administrative settlement under the FTCA. The BOP issued a denial of PLAINTIFF's claim on July 16, 2021.

17.     A reconsideration claim was submitted on September 15, 2021 and BOP issued a denial of the reconsideration claim on September 20, 2023.

18.     This action is timely pursuant to 28 USC §2401(a), as it was presented to the appropriate agency within two years of accrual and this action was filed within six months of denial of PLAINTIFF's administrative claims.

19.     42 USC §1997(e), the Prison Litigation Reform Act, does not apply to this action due to PLAINTIFF's release from prison facilities prior to the filing of this complaint / PLAINTIFF complied with 42 U.S.C §1997(e), the Prison Litigation Reform Act, by commencing his grievance actions on October 6, 2020.

20. PLAINTIFF has been deprived of his rights guaranteed by the United States Constitution and laws of the United States.

21. PLAINTIFF has been deprived of his rights by the Defendants acting under color of federal law.

22. Venue is proper in this judicial district pursuant to §1402(b) because the PLAINTIFF resides within this judicial district.

## PARTIES

23. PLAINTIFF is, and at all relevant times was, a native citizen of the United States and resident of New York State.

24. Upon information and belief, DEFENDANT UNITED STATES is the government of the United States of America and is the appropriate Defendant under the FTCA, 28 U.S.C § 2671, *et seq.*, for the tort claims in this complaint.

25. Upon information and belief, at all times hereinafter mentioned, Defendant UNITED STATES was and still is a sovereign entity named herein pursuant to the FTCA.

26. Upon information and belief, at all times hereinafter mentioned, the Defendant UNITED STATES is the only proper Defendant in an FTCA action, pursuant to 28 U.S.C. §2679(d)(2), and all of PLAINTIFF's tort claims herein against DEFENDANT are subsumed by the FTCA which provides an exclusive remedy for all tort suits against the government and its senior, supervisory and subordinate agents, servants and employees ("employees").

27. Upon information and belief, at all times hereinafter mentioned the United States Department of Justice is an agency of the Defendant UNITED STATES and as such, was and still is a federal entity named herein pursuant to the FTCA.

28. Upon information and belief, at all times hereinafter mentioned, the Defendant BOP's facilities are divisions, components, agents and/or contract partners of the United States

Department of Justice and as such, were, and still are, federal entities named herein pursuant to the FTCA.

29.    Upon information and belief, at all times herein, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN (whose full names are unknown to PLAINTIFF at this time) were the BOP guards, officers, staff and/or medical personnel assigned to and/or working at MDC Brooklyn, FCI Danbury, and FCI Allenwood, who were charged with supervising, protecting, caring and treating PLAINTIFF while he was at MDC Brooklyn, FCI Danbury, and FCI Allenwood, all of which were and still are components, agents and/or contractors with and/or of the United States Department of Homeland Security. At all relevant times, these individuals were acting under color of federal law, as agents, employees, and/or representatives of the Defendant UNITED STATES. They are sued in their individual and official capacity.

30.    During all times mentioned in this complaint, all the Defendants were acting under color of Federal Law — that is under the color of the Constitution, Statutes, Laws, Charter, Ordinances, Rules, Regulations, Customs, and usages of the United States of America.

31.    During all times mentioned in this complaint, the Defendants acted jointly, and in concert, with each other. Each Defendant had the duty to abide by the Constitution and Laws while protecting the PLAINTIFF from substantial risk of harm, injury, unnecessary pain, and suffering. Defendant had the duty to act in accordance with contemporary standards of decency to ensure that the PLAINTIFF's serious medical needs were properly and timely treated after being "advised and aware" of the substantial risk of serious harm that could result with the PLAINTIFF being seriously injured.

32.    At all times relevant herein, each Defendant consciously disregarded the substantial

risk of harm, and with deliberate indifference, refused and failed to prevent the PLAINTIFF from sustaining serious injuries and enduring pain/suffering; thereby subjecting the PLAINTIFF to cruel and unusual punishment, whereby the PLAINTIFF suffered serious injuries. Each defendant acted outside the scope of their employment, in bad faith.

33.    At all relevant times herein, the individual Defendants acted jointly, and in concert, with each other to deprive the PLAINTIFF of his civil rights.

34.    Each individual Defendant had the duty and opportunity to protect PLAINTIFF from the unlawful actions of the other individual Defendants. Yet, each individual Defendant failed and refused to perform such duty, thereby proximately causing PLAINTIFF's injuries.

<u>FACTUAL ALLEGATIONS PERTINENT TO ALL COUNTS</u>

35.    PLAINTIFF Lasean Goode is a 39–year old African American male who was born with sickle cell anemia, which has no cure and can negatively affect the eyes.

36.    On August 9, 2016, PLAINTIFF was arrested by the FBI, without incident, in his apartment in West Haverstraw, New York.

37.    On November 2, 2018, PLAINTIFF was sentenced to sixty (60) months imprisonment and four (4) years of supervised release.

38.    PLAINTIFF's incarceration began at Westchester County Prison, at which point his complaints regarding his worsening vision were met with the response of "nothing was wrong."

39.    In 2018, he was transferred to FCI Danbury, where he remained incarcerated until January 2020.

40.    On March 19, 2019, PLAINTIFF was evaluated by Dr. Thomas Wagner, an optometrist at FCI Danbury as a result of PLAINTIFF experiencing a "sudden decrease" in vision with "'explosion' in sight with colors" and a "significant loss in clarity."

41. Dr. Wagner reported that he had a "very high suspicion" that PLAINTIFF's eye complications were caused by his sickle cell condition.

42. On March 29, 2019, after finding vitreous hemorrhaging in PLAINTIFF's right eye, Dr. Wagner requested a consultation with Dr. Christopher R. Reynolds, an ophthalmic physician and surgeon. Dr. Wagner's request was marked as "urgent" and stated, "referral necessary ASAP to ophthalmology/retinal specialist" and that the visit was to be scheduled at "earliest convenience for best potential outcome."

43. Over a month later, on May 6, 2019, PLAINTIFF was finally seen by Dr. Reynolds, who noted that there was "a potential need for vitrectomy" to be performed by a retinal specialist.

44. Two days later on May 8, 2019, PLAINTIFF consulted with Dr. Wagner once again, who reported, "this could be more than a vitreous heme, with potential retinal detachment." He also requested an "urgent" consultation with a retinal specialist "due to [the] complex nature of [the] condition and the potential need for advanced methods to appropriately diagnose [the] extent of the problem."

45. Over a month later, on June 18, 2019, PLAINTIFF was evaluated by Dr. Vincent S. Reppucci from Vitreoretinal Surgeons, LLP. Dr. Reppucci then recommended a vitrectomy in the right eye and laser treatment in the left eye.

46. Dr. Reppucci instructed PLAINTIFF to notify the "appropriate authorities" if he were to note visual loss in either eye so that a "repeat retinal evaluation be performed on a timely basis."

47. On October 17, 2019 PLAINTIFF began to suffer from blurred vision in his right eye in the midst of a sickle cell crisis.

48. PLAINTIFF alerted the BOP, who can be considered the "appropriate authorities."

49. On October 29, 2019, PLAINTIFF was evaluated by Dr. Reppucci again, at which point he suggested PLAINTIFF "obtain a surgical consultation for [the] right eye to remove traction" due to the fact Dr. Reppucci had discovered a detachment in PLAINTIFF's retina.

50. Despite follow–up and evaluation appointments that were scheduled and pending, the October 29, 2019 consultation with Dr. Reppucci was the last time PLAINTIFF's eyes were evaluated while at FCI Danbury.

51. On January 15, 2020, PLAINTIFF was transferred to MDC Brooklyn.

52. That there is no evidence to support claims that consultation requests that did not take place at FCI Danbury were re–submitted with a target date of February 19, 2020.

53. In March 2020, PLAINTIFF was transferred to FCI Allenwood.

54. On March 20, 2020, during a 14–day intake evaluation, D.O. Thomas Cullen noted that PLAINTIFF saw a vitreoretinal specialist in October 2019 and that the recommended surgery was "apparently not done."

55. D.O. Thomas Cullen, presumably taking note of the urgency of the situation, scheduled a same–day urgent evaluation at Geisinger Eye Institute, located at 16 Woodbine Lane, Danville PA 17822, in the midst of the COVID–19 pandemic.

56. At the aforesaid appointment at Geisinger Eye Institute, PLAINTIFF stated that he had suffered from blindness in his right eye for two (2) weeks.

57. PLAINTIFF was diagnosed with vitreous hemorrhage and possible retinal detachment in the right eye and ischemic retina and neovascularization in the periphery of the left eye.

58. PLAINTIFF was scheduled to undergo surgery in both eyes.

59.     Dr. Steven J. Marks explained that laser surgery in the left eye would prevent damage that the right eye endured.

60.     On March 24, 2020, Dr. Marks and Dr. Gordon Crabtree performed a pars plana vitrectomy, complex membrane peeling, and endolaser silicone oil on PLAINTIFF's right eye.

61.     On March 24, 2020, Dr. Marks and Dr. Crabtree performed a laser panretinal photocoagulation on PLAINTIFF's left eye.

62.     On March 24, 2020, during the aforesaid procedures to PLAINTIFF's left and right eye, it was concluded that PLAINTIFF had traction retinal detachment involving superior macula.

63.     As early as March 26, 2020, two (2) days after the aforesaid procedures to his left and right eye, PLAINTIFF had a "little bit of his vision back."

64.     By May 6, 2020, PLAINTIFF had blurry vision and could make out objects, but couldn't read.

65.     On May 15, 2020, PLAINTIFF did not experience a change in vision and has since suffered from permanent partial loss of vision in his right eye.

## CAUSES OF ACTION UNDER FEDERAL TORTS CLAIM ACT ("FTCA")

### FIRST CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT UNITED STATES OF AMERICA

66.     The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 66 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

67.     The above described actions of the Defendant UNITED STATES, by and through its agents, servants, and employees, working at MDC Brooklyn, FCI Danbury, and FCI Allenwood namely,  MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY

WARDEN, engaged in extreme and outrageous conduct, jointly and individually, namely unreasonably delaying and/or denying him proper medical care, which were all actions and conduct done with the intent to cause, or with the intentional disregard of a substantial probability of causing, severe emotional distress to the PLAINTIFF. Further, each one of these acts alone constituted extreme, outrageous and unconscionable conduct, outside the bounds of normal conduct, and caused severe fear whose painful recall still injures the PLAINTIFF.

68.     The PLAINTIFF was caused to suffer and continues to suffer emotional injury; loss of enjoyment of life and his usual and customary activities and social and familial relationships.

69.     Such extreme and outrageous conduct shocks the conscious, is not expected or to be tolerated in a civilized society, and PLAINTIFF demands damages therefrom in an amount not lower than the amount previously claimed before the administrative agency in this action.

SECOND CLAIM FOR RELIEF
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT UNITED
STATES OF AMERICA

70.     The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 70 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

71.     The above described actions of the Defendant UNITED STATES, by and through its agents, servants, and employees, working at MDC Brooklyn, FCI Danbury, and FCI Allenwood namely, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN, variously, jointly and individually, negligently and recklessly inflicted emotional injury on the PLAINTIFF when they failed to protect PLAINTIFF from a known and/or foreseeable harm namely, due to negligently delaying and/or denying him proper medical care, which were all actions and conduct done with the intent to cause, or with the intentional disregard of a substantial probability of causing, severe emotional distress to the PLAINTIFF. Further, each

one of these acts alone constituted extreme, outrageous and unconscionable conduct, outside the bounds of normal conduct, and caused severe fear whose painful recall still injures the PLAINTIFF.

72.     Due to the Defendant UNITED STATES's extreme and outrageous conduct, by and through the actions of its employees, agents or subagents, to wit, the aforementioned Defendants, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN, PLAINTIFF was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain and severe emotional distress.

73.     By the reason of the foregoing, PLAINTIFF, was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous attacks and mental anguish, great physical pain and emotional upset, some of which injuries are permanent in nature and duration, and PLAINTIFF will be permanently caused to suffer pain and inconvenience and other effects of such injuries; and PLAINTIFF has incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of such said injuries; and PLAINTIFF has suffered and in the future will necessarily suffer additional loss of time from his usual pursuits, duties and activities; and PLAINTIFF will be unable to pursue PLAINTIFF'S usual duties with the same degree of efficiency as prior to this occurrence all to PLAINTIFF'S great damage.

74.     The above acts, which are indicative of a tort under the laws of New York, Pennsylvania, and Connecticut, are actionable under the FTCA.

75.     Accordingly, the aforementioned Defendants negligently inflicted emotional distress on PLAINTIFF, who has been damaged and seeks relief and compensation in an amount not lower than the amount previously claimed before the administrative agency in this action.

THIRD CLAIM FOR RELIEF
MEDICAL NEGLIGENCE AGAINST DEFENDANT UNITED STATES OF AMERICA

76. The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 76 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

77. At all relevant times, PLAINTIFF was in the custody of the individual agents, servants, and/or employees of Defendant UNITED STATES and MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN.

78. At all relevant times, Defendant UNITED STATES, through the aforementioned individuals, was exclusively responsible for PLAINTIFF's medical care, thereby creating a professional duty owed to the PLAINTIFF.

79. Dr. Thomas Wagner and Dr. Thomas Cullen, BOP employees based out of FCI Danbury and FCI Allenwood, indicated that PLAINTIFF required immediate surgery, among other forms of treatment, but found that surgery was "apparently not done."

80. PLAINTIFF made multiple requests for follow-up medical treatment, but did not receive any of the requested treatment.

81. The PLAINTIFF's treatment was delayed for approximately five (5) months.

82. The delay in medical treatment is alleged to have contributed to PLAINTIFF suffering blindness in his right eye.

83. The PLAINTIFF was repeatedly lied to, manipulated, and denied his necessary medical care.

84. Additionally, Defendant UNITED STATES OF AMERICA, through the aforementioned individuals, negligently, carelessly, and unskillfully failed to provide PLAINTIFF with the medically correct and/or appropriate care and treatment for the ruptured globe of the left eye and negligently and carelessly failing to follow standard and good medical practice including

follow-up recommendations, responding to PLAINTIFF's complaints, conducting recognized tests and procedures, and scheduling treatment. This conduct deviated from the appropriate established reasonable standard of care, thereby constituting a breach of Defendant's professional duty and duty to exercise reasonable care, which proximately caused pain and suffering, such as, pain, loss of sight, among other injuries.  Prompt treatment would have prevented the onset of the loss of eyesight, and sequelae injury.

85.    Throughout the course of PLAINTIFF's detainment, while suffering injuries to his eye, he did not receive a proper diagnosis.

86.    Preventative treatment methods were not performed, thus causing a complete loss of vision in PLAINTIFF's right eye.

87.    The Defendant UNITED STATES, through the aforementioned individuals, negligently and carelessly failed to provide an accurate and proper diagnosis and negligently and carelessly failed to recognize PLAINTIFF's complaints.

88.    This conduct deviated from the appropriate established reasonable standard of care, thereby constituting a breach of Defendant's professional duty and duty to exercise reasonable care which proximately and directly caused pain and suffering, such as emotional distress, trauma, and anxiety, all of which he is presently battling.

89.    By reason of the foregoing negligent and careless acts of the Defendant UNITED STATES, through the actions of the aforementioned individuals, acting with medical negligence under the laws of the states of New York, Connecticut, and Pennsylvania.

90.    Thus, PLAINTIFF seeks relief and compensation  in an amount not lower than the amount previously claimed before the administrative agency in this action.

FOURTH CLAIM FOR RELIEF
NEGLIGENCE AGAINST DEFENDANT UNITED STATES OF AMERICA

91.     The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 97 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

92.     The aforementioned actions of the Defendant UNITED STATES, by and through its senior, supervisory and /or subordinate agents, agencies, servants and/or employees were all federal employees acting in their official and individual capacities, constitute negligence under the FTCA in that these agents of the Defendant UNITED STATES, owed a duty of care to PLAINTIFF, and Defendant breached that duty of care by acting in violation of the Constitution, laws, Statutes and Regulations of the USA, not least of which is FTCA, as well as the Constitution, Laws, Statutes and Regulations of New York State.

93.     Common law sets forth that a public entity, under a mandatory duty, is liable for any injury proximately caused by a breach of duty. This aforementioned conduct, including, but not limited to, failure to properly and safely supervise the prison population; failure to prevent a foreseeable dangerous hazardous condition in a prison; failure to protect inmates from other inmate violence; failure to prevent an assault and battery by one inmate against another; failure to provide prompt and proper medical care to an injured prisoner; failure to provide timely medical treatment, medical negligence, deliberate indifference to medical needs, constitutes a breach of duty which was the direct and proximate cause and a substantial factor in the injuries and damage PLAINTIFF endured and continues to endure.

94.     At all relevant times, the aforementioned individuals involved in each cause of action were acting under the scope of their employment and had a duty to exercise mandatory protocols and exercise due diligence of law enforcement under the FTCA. Violations of such duties include: failing to exercise the appropriate due diligence to avoid unreasonable harm and injury to

PLAINTIFF, failing to seek and provide all relevant and reasonable medical care for PLAINTIFF; failing to properly investigate wrongdoings by defendant employees, agents, servants and other personnel; failing to intervene as and against other Defendants' sub-agents who were intentionally, recklessly and or negligently failing in their duties to PLAINTIFF; failing to properly supervise and review the negligent and or intentional wrongdoing of its sub-agents who were contravening the law and constitution; failing in their duty to exercise reasonable care in the performance of their professional responsibilities; failing in this duty to exercise reasonable care as it applies to the investigation of threats of violence against PLAINTIFF, and failing in their duty of reasonable care. Taking part in the aforementioned prohibited acts without legal justification and without taking reasonable precautions to avoid harm to PLAINTIFF, their duty was breached causing the PLAINTIFF harm.

95.    Based upon the foregoing, Defendant UNITED STATES was negligent toward PLAINTIFF and PLAINTIFF has been damaged, and seeks relief and compensation, in an amount not lower than the amount previously claimed before the administrative agency in this action.

<u>FIFTH CLAIM FOR RELIEF</u>
NEGLIGENT GUARD VIOLATIONS AGAINST
DEFENDANT UNITED STATES OF AMERICA

96.    The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 102 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

97.    The aforementioned actions of the Defendant, UNITED STATES, by and through its senior, supervisory and/or subordinate agents, agencies, servants and/or employees were all federal employees acting in their individual capacities, constitute negligent guard violations under the FTCA in that these agents of the Defendant UNITED STATES owed a duty of care to PLAINTIFF, and Defendants breached that duty of care by acting in violation of the United States

Constitution, New York state laws, and federal statutes and regulations. Such violations include, but are not limited to, failure to use reasonable care in carrying out their duty; failure to properly supervise inmates to avoid inmate on inmate violence; failing to provide him with timely medical care; medical neglect; deliberate indifference; racial discrimination; failure to intervene by turning a blind eye to inhumane and outrageous conduct of other guards and staff and ignoring his pleads and complaints, and failure to comport their conduct as providers of PLAINTIFF's care and custody, with applicable statutes, rules, regulations and ordinances.

98.    These violations directly and proximately caused physical and emotional distress, unnecessary medical consequences, and trauma which has manifested in present day, and more.

99.    Based upon the foregoing, Defendant UNITED STATES, by and through the aforementioned individuals, negligently discharged their duties without legal justification or reasonable precautions causing harms constituting negligence of guards toward PLAINTIFF. Accordingly, PLAINTIFF has been damaged and seeks relief and compensation in an amount not lower than the amount previously claimed before the administrative agency in this action.

## CAUSES OF ACTION UNDER BIVENS

### SIXTH CLAIM FOR RELIEF
DELIBERATE INDIFFERENCE CLAIM FOR FAILURE TO PROVIDE MEDICAL CARE AGAINST DEFENDANTS MDC BROOKLYN WARDEN, FCI DANBURY WARDEN, FCI ALLENWOOD WARDEN, (In Violation Of PLAINTIFF's Eighth Amendment Right)

100.    The PLAINTIFF hereby incorporates by reference each and every preceding paragraphs 1 through 118 of this civil complaint as though fully pleaded and re-alleged in their entirety below with the same force and effect as though fully stated herein.

101.    At all relevant times, PLAINTIFF was in the custody of the individual agents, servants, and/or employees of Defendant UNITED STATES, namely, JOHN & JANE DOES #1–10, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY

WARDEN.

102. That "[t]he Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care," thereby establishing the duty of the aforementioned individuals. <u>Salahuddin v. Goord</u>, 467 F.3d 263, 279 (2d Cir. 2006). To prove deliberate indifference, the deprivation of treatment must be "sufficiently serious" and the prison official must act with a sufficiently capable culpable state of mind." <u>Id</u>. at 184, 185.

103. The deprivation of treatment is considered serious if "a reasonable doctor, or patient, would find it important and worthy of comment, if it's found that the condition significantly affects an individual's daily activities, and if it's found that it causes chronic and substantial pain. <u>Id</u>. at 280.

104. The delay in treating PLAINTIFF's eye was serious because Dr. Thomas Wagner, a doctor working at FCI Danbury, indicated on 5/8/2019 that given PLAINTIFF'S eye injuries, he was requesting an "urgent" consultation with a retinal specialist "due to [the] complex nature of [the] condition and potential need for advanced methods to appropriately diagnose [the] extent of the problem."

105. Dr. Wagner requested a necessary referral "ASAP" for "best potential outcome" and later requested another "urgent" consultation. Dr. Reppucci suggested surgical treatment in both eyes twice. Dr. Cullen made note that recommended surgery was not done and scheduled a same-day urgent evaluation at Geisinger Eye Institute. This appointment was scheduled so quickly, despite delays caused by the COVID-19 pandemic. Dr. Marks suggested that surgery also be done in the left eye as a preventative measure.

106. Further, on 3/20/20, Dr. Thomas Cullen noted that PLAINTIFF's recommended surgery was "apparently not done."

107. PLAINTIFF repeatedly made Defendants JOHN & JANE DOES #1–10, MDC BROOKLYN WARDEN, FCI ALLENWOOD WARDEN, and FCI DANBURY WARDEN aware of his medical condition, prior treatment and symptoms to his eyes required to effectively mitigate his sickle cell anemia; the progressive and continuous aggravation of his eye injuries and declining eyesight.

108. BOP staff, officers and doctors acted with a culpable state of mind as they knowingly ignored PLAINTIFF's complaints and pleas to receive his necessary treatment.

109. PLAINTIFF's condition had been diagnosed by a physician as urgently requiring appropriate treatment due to suffering from a condition that is so obvious that a lay person would easily recognize the necessity for a physician's attention and treatment.

110. The Defendant's refusal and/or failure to provide medical care was deliberate, wanton, willful, and violated the PLAINTIFF's rights, as provided under the Constitution, The Defendant's refusal and/or failure to provide medical care was deliberate, wanton, willful, and violated the PLAINTIFF's rights, as provided under the Constitution, constituting a claim for deliberate indifference to PLAINTIFF's medical needs against Defendant, UNITED STATES. Based on the willful, wanton, and egregious nature of Defendant's actions, PLAINTIFF is entitled to punitive damages.

111. Herein, PLAINTIFF incorporates a claim for relief under Bivens as the aforementioned Defendants instituted and implemented customs and practices which encouraged and abetted the violations of the PLAINTIFF's constitutional rights.

112. Accordingly, PLAINTIFF has been damaged and seeks relief in compensatory and punitive damages.

113. Based on the foregoing, Defendant, UNITED STATES, by and through the

aforementioned individuals deprived PLAINTIFF of his constitutional right. Accordingly, PLAINTIFF seeks punitive and compensatory damages.

PRAYER FOR RELIEF

**WHEREFORE,** PLAINTIFF demands judgment against the defendants in an amount not lower than the amount previously claimed before the administrative agency in this actions and or in an amount to be determined upon the trial of this action, together with the costs and disbursements of this action and any other such relief as this honorable Court may deem just, fair and proper, to wit:

A. Compensatory damages for torts committed against PLAINTIFF, LASEAN GOODE, in an amount not lower than previously claimed in the administrative agency actions.

B. Declaratory relief for violations of the Federal Tort Claims Act;

C. Punitive damages in in a total amount not lower than $10,000,000.00;

D. Pursuant to §1988, an award of reasonable attorneys' fees, costs, and expenses of litigation; and as permitted by law prejudgment interest.

E. Such additional and further relief as the Court may deem just and proper.

Dated: October 31, 2024
     New York, NY

Tanner & Ortega, LLP.
Hugo Ortega, Esq.
*Attorney for Plaintiff*
299 Broadway – 17th Floor
New York, NY – 10007
(212) 962 – 1333